# United States Court of Appeals
## for the Fifth Circuit

———————————

No. 21-50909

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2023

Lyle W. Cayce
Clerk

Hubert Edward Castro,

*Plaintiff—Appellant*,

*versus*

Warden Darren Wallace, *TDCJ Hughes Unit, in his Individual and Official Capacity*; Assistant Warden Toby Powell, *TDCJ Hughes Unit, in his Individual and Official Capacity*; Chimdi Akwitti; Beverly Dawn Smith; Captain Annette Martinez, *TDCJ Hughes Unit, in her Individual and Official Capacity*; Counsel Substitute K. Brase, *TDCJ Hughes Unit, in his Individual and Official Capacity*; Counsel Substitute Jane #2 Doe, *TDCJ Hughes Unit, in her Individual and Official Capacity*; Counsel Substitute Jane Doe #3, *TDCJ Hughes Unit, in her Individual and Official Capacity*; Director's Review Committee - Huntsville, *Individual and Official Capacity*; Nichole McEntire; Diana Duff; Veronyka Kiss,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:20-CV-1116

———————————————————————

Before Richman, *Chief Judge*, and Stewart and Dennis, *Circuit Judges*:

Per Curiam:[*]

Hubert Edward Castro, Texas prisoner #1049656, appeals the dismissal of his pro se 42 U.S.C. § 1983 civil rights complaint. For the following reasons, we AFFIRM in part, VACATE in part, and REMAND.

**I.**

Castro filed his complaint in 2020, arguing that the defendants violated his constitutional rights by filing false disciplinary charges against him and restricting his contact with his wife. Specifically, he alleged that in a 2013 Inter-Office Communication (IOC), Darren Wallace, then the Stiles Unit assistant warden, recommended restricting Castro's communications with his wife, Mrs. Cash-Castro, a former prison employee. The IOC indicated that Castro was a member of the Mexican Mafia and that Cash-Castro had provided Castro with a cellular telephone. Castro's complaint further alleged that, in 2019, the defendants initiated a false disciplinary case against him based on conduct occurring in the Hughes Unit. Castro alleged that prison officials overheard him and his wife discussing the 2013 IOC and the possibility of initiating legal action against Wallace, who had become the Hughes Unit warden. Castro alleges that in retaliation for discussing this possible legal action, one of the defendants, Beverly Dawn Smith, falsely charged him in a disciplinary case with planning to inflict harm on Wallace and to smuggle contraband drugs (K2) into the prison with his wife's help. Castro alleged that Smith based these false charges on alleged recordings or transcripts of conversations between him and his wife.

Castro also alleged that certain defendants, including Chimdi Akwitti, improperly handled the grievances he filed challenging his disciplinary conviction for the false charges. Further, he alleges that K. Brase and the Jane Doe defendants, who acted as his counsel substitute during the disciplinary

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-50909

proceedings, violated his constitutional rights by failing to secure either a recording or a transcript of the alleged conversations between Castro and his wife. Castro sought compensatory and punitive damages, declaratory relief, and injunctive relief. After Castro filed a more definite statement at the request of the district court, defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b). The district court granted the motion to dismiss, and Castro appeals.

## II.

We review a dismissal of a complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) *de novo*. *See Smith v. Hood*, 900 F.3d 180, 184 (5th Cir. 2018).

## III.

### A.

An individual state officer sued in his official capacity for § 1983 money damages is entitled to immunity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Dismissal of such claims is proper under Rule 12(b)(1) and is reviewed *de novo*. *See Smith*, 900 F.3d at 184. Claims for declaratory and prospective injunctive relief against such state officers in their official capacities are permissible. *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998). Contrary to Castro's arguments, the district court properly dismissed his claims for damages against the defendants in their official capacities and recognized that the immunity doctrine did not bar his remaining claims. *See Oliver*, 276 F.3d at 742.

### B.

The district court also dismissed Castro's claims against K. Brase and the Jane Doe defendants, who acted as Castro's counsel substitutes during the disciplinary proceedings. The court determined that the defendants were

not state actors for purposes of § 1983 liability, and Castro had not alleged a conspiracy to commit an illegal act and violate his constitutional rights between the defendants and a state actor.

To state a § 1983 claim against his counsel substitutes, Castro was required to "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Pratt v. Harris Cnty.*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted). In *Banuelos v. McFarland*, we analogized the role of a counsel substitute to that of a public defender and noted that a public defender does not act under color of state law when acting as an advocate. 41 F.3d 232, 234 (5th Cir. 1995) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981)). We therefore held that the actions of counsel substitute in a prison disciplinary hearing likewise are not actions under color of state law. *Id.* As alleged in Castro's complaint, K. Brase and the Jane Doe defendants served as counsel substitutes, acting as Castro's advocates during the disciplinary hearing, and are therefore not state actors. *See id.* The district court did not err in dismissing Castro's claims against these defendants.

## C.

The district court also rejected Castro's claim against Akwitti, noting that supervisory officials cannot be held vicariously liable in § 1983 cases; rather, they only may be held liable if they are personally involved in the alleged constitutional violation. Here, Castro has not alleged that Akwitti was personally involved aside from his routine handling of a grievance, and Castro had no constitutional right to have his grievance resolved in a favorable manner. Further, even if a prison official overturned the disciplinary conviction after Castro filed a Step 2 grievance, Castro's argument that he was denied a meaningful prison grievance proceeding by Akwitti's denial of

his Step 1 grievance was properly dismissed because any due process error in his disciplinary case was cured when the case was overturned through the administrative appeal process. *See Ard v. Leblanc*, 404 F. App'x 928, 929 (5th Cir. 2010); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

## D.

For the first time in his reply brief, Castro challenges the district court's dismissal of his retaliation claim. This court does not consider issues raised for the first time in a reply brief, and we therefore affirm the district court's dismissal of Castro's retaliation claim. *See Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002).

## E.

In rejecting Castro's claim that the defendants violated his constitutional rights by restricting contact with his wife, the district court held that the prison had a legitimate interest in maintaining security that justified such a restriction, given that Castro's wife had smuggled an illegal cell phone into the prison in 2013, Castro and his wife sought to smuggle K2 into the prison in 2019, and they sought to harm Warden Wallace in 2019. Although the 2019 disciplinary conviction was overturned, the district court concluded that the conviction was overturned for procedural reasons, which did not eliminate the security risk posed by Castro.

Our review of the district court's Rule 12(b)(6) dismissal is *de novo*. *See Smith*, 900 F.3d at 184. We, like the district court, must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). Dismissal "is warranted if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 734 (internal quotation marks and citation omitted).

Prisoners retain First Amendment free speech rights that are consistent "with the legitimate penological objectives of the corrections system." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (internal quotation marks and citation omitted). Restrictions on those rights cannot be greater than necessary to protect the correctional interests involved. *Id.* at 822. "[P]risoners have no absolute constitutional right to visitation," but "[e]ven so, limitations of visitation may be imposed only if they are necessary to meet legitimate penological objectives." *Lynott v. Henderson*, 610 F.2d 340, 342-43 (5th Cir. 1980); *see Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999).

To support the conclusion that there was a reasonable penological interest at stake, the district court pointed to the 2013 IOC that Castro and his wife smuggled an illegal cell phone into the prison and the 2019 disciplinary case that claimed Castro sought to smuggle K2 into the prison and to harm Wallace. As to the 2013 IOC, however, Castro alleged in his complaint and in his response to the district court's request for a more definite statement that the IOC contained false charges and that the defendants permitted him to resume contact with his wife five years after the 2013 IOC. Viewing the facts as true and in the light most favorable to Castro, *see Walker*, 938 F.3d at 735, the defendants no longer considered the smuggled telephone a security concern in 2019, because he was permitted to resume contact with her.

The remaining two grounds supporting the district court's decision—Castro's supposed attempts to smuggle K2 into the prison and to harm Wallace with his wife's help—are belied by Castro's attachment to his complaint, which shows that these grounds were the basis of the 2019 disciplinary conviction, which was subsequently overturned. Castro alleged in his complaint that he and his wife never discussed smuggling K2 into the prison, nor did they discuss harming Wallace, but instead had discussed filing

No. 21-50909

a lawsuit against Wallace, and the defendants made false accusations against him in the disciplinary proceeding in retaliation for his intent to file a lawsuit against Wallace. Although the district court concluded that the disciplinary conviction was overturned for procedural reasons, which could mean that the grounds underlying the conviction remained valid security concerns, the grievance report provides no express reason for the decision to overturn the conviction. It is true that Castro argued that his procedural due process rights were violated during the disciplinary proceedings, and it is therefore possible that the grievance officer's decision to overturn the conviction was based on these procedural reasons. But construing the facts in Castro's favor, we cannot conclude that the conviction was certainly overturned for procedural reasons, and the district court therefore erred in not construing the facts in the light most favorable to Castro.

Given Castro's allegations that the defendants permitted him to resume contact with his wife a few years after the 2013 IOC, that his 2019 disciplinary conviction was overturned, and that the charges against him were false, and the absence of facts showing that the conviction was overturned for procedural reasons, we conclude that the district court did not accept Castro's allegations as true and view them in the light most favorable to Castro. *See Walker*, 938 F.3d at 735. Accordingly, we vacate and remand as to the district court's ruling on Castro's First Amendment claim. As it appears that Castro is no longer housed in either the Stiles or Hughes Units where he alleged that the 2013 and 2019 incidents occurred, the district court will be in a better position to determine the effect of his transfer on remand. *See Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

## IV.

Accordingly, the district court's judgment is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent

No. 21-50909

with this opinion. Castro's motion for the appointment of counsel is DENIED.